IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAURICE DAVIS,

    Petitioner,               No. CIV S-03-2344 GEB CMK P

    vs.

DIANA BUTLER, Warden, et al.,

    Respondents.         FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus. Petitioner challenges a May 22, 2001 denial of a parole date by the Board of Prison Terms (Board). Specifically, petitioner argues that the Board's denial of a release date violated his due process rights because there was no evidence supporting the Board's unsuitability finding.

I.    <u>Background</u>

        Petitioner pled guilty to one count of murder in the second-degree and was sentenced to a term of fifteen-years-to-life. (Answer, Ex. A.) Petitioner appeared before the Board on May 22, 2001. (<u>Id.</u>, Ex. B (transcript of the hearing.)) Petitioner was represented by counsel; he answered questions from the commissioners; and his attorney argued on his behalf. (<u>Id.</u>) Petitioner had a chance to make a statement but, he choose to end his case with his attorney's statement.

The Board denied petitioner parole:

[T]he panel reviewed all of the information received from the public and relied on the following circumstances in concluding that you are not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The offense was carried out in an especially cruel and callous manner. The offense was carried out in a dispassionate and calculated manner, such as an execution style murder. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The motive for the crime was inexplicable or very trivial in relation to the offense. The murder of the victim did not deter the prisoner from later committing another criminal offense, specifically those on September 3rd of 1990, there was a burglary in which the charges were dismissed when the victim refused to testify. These conclusions are drawn from the Statement of Facts wherein the prisoner shot the victim in the face, killing him, and all because of an argument the victim was having with the prisoner's brother. The prisoner has an escalating pattern of criminal conduct, has a history of unstable and tumultuous relationships with others, has failed previous grants of probation, has failed to profit from society's previous attempts to correct his criminality. Such attempts include juvenile probation. He has an unstable social history and prior criminality which includes vehicle theft, possession of a knife on school campus, another auto theft, AWOL from a boy's camp, and the sale of cocaine. The prisoner has failed to upgrade emotionally, has not sufficiently participated in beneficial self-help of therapy programs, has 12 128 counseling chronos with the last one being August of '99, and has 115s, actually he has four 115's, disturbing other classes, disobeying orders, poor performance, and the last one was March 6 of 2001 for circumventing the security of the institution. The psychiatric psychological report dated August 10th of 2000, authored by Dr. Beermann, B-E-E-R-M-A-N-N, is not totally supportive of the release and basically, where it is not supportive is just that Dr. Beermann notes that he has no planned living arrangement or support system and that his parole plans are non-existent. So his prognosis for adjustment to the community living is average in that he has some work skills. The prisoner lacks realistic parole plans in that he does not have viable residential plans in the last county of legal residence and he does not have acceptable employment plans. The hearing Panel notes that responses to PC 3042 notices indicate opposition to a finding of parole suitability, specifically from the District Attorney of Alameda County and Oakland Police Department, from Sergeant Roger Short in opposition to parole. The Panel makes the following findings, that the prisoner needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner and until progress is made, the prisoner continues to be unpredictable and a threat to others. Therapy in a controlled setting is needed, but motivation and amenability are questionable. The prisoner gains are recent and he must demonstrate an ability to maintain gains over an extended period of time. Nevertheless, we would like to commend the prisoner for, Mr. Davis, you have really done well in getting your voc certificate in mill and cabinet. That was about 2650 hours. You have your fork-lift driving certificate. You have been working to support yourself. You have participated in self-help, the Twelve Step program, your Common Destiny Lifer's Group, your 12 hour literacy program and your Alternatives to Violence program. And we also wanted to note the laudatories in your file of working with the victim's [sic] of crime and making toys and furniture for the kids. So you have some very, very positive things in

      your file.  This is going to be a three year denial.  I want you to know, Mr. Davis, that we have the ability to go up to a five year denial for you, but we feel that you are doing a lot of the right things, but it's still going to take some time to see about some of the things that we have talked about.  In a separate decision, the Hearing Panel finds that the prisoner has been convicted of murder and it is not reasonable to expect that parole would be granted during the next three years.

(Answer, Ex. B at 51-54.)  The Board went on to note in a separate decision that:

      ...The prisoner has not completed necessary programing, which is essential to his adjustment on the outside and needs additional time to gain such programming. He has failed to participate in AA and NA since 1995 and needs to complete his GED.  Therefore, a longer period of observation and evaluation is required before the Board should find the prisoner suitable for parole.

(Id., Ex. B at 55.)

      Petitioner then challenged the denial through the administrative process, and then further through successive habeas petitions in the California state courts. ( Id., Exs. C- F.)

## II.   Standards for Granting Habeas Relief

      An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)  that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).  In other

4

words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law. It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

III.     Arguments and Analysis

At the onset, the court notes that, in a supplemental answer, respondent argues that petitioner does not have a federally protected liberty interest in parole and so his petition does not present a federal question cognizable in this action. The Ninth Circuit addressed this issue in Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (2006) and held that California's parole statute created a due process liberty interest in release on parole. Accordingly, the court concludes that it has subject matter jurisdiction over this action and addresses the substantive claims in petitioner's habeas application.

The last reasoned decision from the state courts, which this court must examine, is that issued by the Alameda County Superior Court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991). The Superior Court denied petitioner's claims, stating:

> Petition for writ of habeas corpus is denied. Petitioner fails to state a primae facie case for the relief sought. Nothing provided by Petitioner would support a finding that the BPT in any way abused its discretion or in any way violated the rights of petitioner.

(Answer, Ex. D.)

Petitioner makes three claims in his habeas petition; however, upon examination of the petition it is clear that the gravamen of each of the three claims is that there is not sufficient evidence supporting the Board's decision to deny petitioner a parole date.

Under California law, the Parole Board is not to set a parole date if, among other things, it feels that the gravity of the potential parolee's current and prior offenses are such that "public safety requires a more lengthy period of incarceration..." Cal. Penal Code § 3041(b).

1  Also, parole must be denied without regard to time already served if release will pose "an
2  unreasonable risk of danger to society." Cal. Code of Regs. tit. 15 § 2402(a); see In re
3  Rosenkrantz, 29 Cal. 4th 616, 654 (2002). The specific factors the parole board is authorized to
4  consider in determining whether someone is suitable for parole are found in the California Code
5  of Regulations; the factors include an inmate's social history, mental state, past criminal history,
6  commitment offense, criminality generally, and conditions capable of treating or controlling
7  behavior upon release. Cal. Code Regs. tit. 15, § 2402(b).
8          As noted above, the Ninth Circuit has determined that California's parole statute
9  gives prisoners a liberty interest in release on parole. See Sass, 461 F.3d at 1127-28. The
10 existence of this liberty interest entitles a prisoner to various procedural protections as part of the
11 parole determination, including a hearing, a statement of reasons for the denial of parole, and a
12 denial of parole based on some evidence with some indicia of reliability. See Greenholtz v.
13 Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). To determine whether the
14 "some evidence" standard is met "does not require examination of the entire record, independent
15 assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant
16 question is whether there is any evidence in the record that could support the conclusion reached
17 by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). As noted by the
18 Ninth Circuit in Sass, Hill's "some evidence standard is minimal, and assures that 'the record is
19 not so devoid of evidence that the findings of the disciplinary board were without support or
20 otherwise arbitrary." Sass, 461 F.3d at 1129.
21         In making its decision here, the Board cannot be characterized as acting arbitrarily.
22 In this case, the Board based its finding that petitioner was unsuitable for parole on the gravity of
23 his convicted offense in combination with his prison disciplinary problems, his pre-conviction
24 offenses, his failure to participate in self-help programs, and his lack of post-release housing and
25 employment plans. (Answer, Ex. B.) Although the Board noted petitioner's positive involvement
26 in victim's groups and obtaining certificates, the Board found that these achievements did not

1 outweigh the factors of unsuitability.  (Id.)  There is no constitutional requirement that the Board
2 do more.

3       Petitioner's contention that the Board erred in considering his conviction offense
4 in a finding of parole unsuitability fails.  The Ninth Circuit has stated that "continued reliance in
5 the future on an unchanging factor, the circumstances of the offense, and conduct prior to the
6 imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could
7 result in a due process violation."  Sass, 461 F.3d at 1129 (emphasis in original) (internal citations
8 omitted).  The challenged parole denial was petitioner's first parole suitability hearing.  It is not
9 the court's place to speculate about how future parole hearings might proceed.  See id.  The
10 evidence of petitioner's prior offenses, the gravity of his conviction offense, his prison
11 disciplinary infractions, his lack of participation in self-help programs, and his lack of post-
12 release employment and housing constitute some evidence to support the Board's decision.
13 Consequently, the court finds that the state court decisions upholding the denials were neither
14 contrary to, nor did they involve an unreasonable application of, clearly established federal law as
15 determined by the Supreme Court of the United States.
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

IV.     Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 4, 2006.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE